1

2

3

4

5                               UNITED STATES DISTRICT COURT
                                WESTERN DISTRICT OF WASHINGTON
6                                       AT SEATTLE

7    DAVID R. ROBERTS,

8                      Plaintiff,                    CASE NO. C17-5544-MAT

9           v.

10   NANCY A. BERRYHILL, Deputy                      ORDER RE: SOCIAL SECURITY
     Commissioner of Social Security for             DISABILITY APPEAL
11   Operations,

12                     Defendant.

13

14          Plaintiff David R. Roberts proceeds through counsel in his appeal of a final decision of the

15   Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16   Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits

17   (DIB) after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's

18   decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

19                         **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1966.[1]  He has a ninth-grade education, and has worked as

21   an auto mechanic, tile installer, and arborist.  (AR 54-56, 200.)

22

23          [1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

     ORDER RE: SOCIAL SECURITY
     DISABILITY APPEAL
     PAGE - 1

Plaintiff protectively applied for SSI and DIB in March 2014. (AR 76-77, 169-85.) Those applications were denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (AR 112-14, 117-26.)

On November 18, 2015, ALJ Robert P. Kingsley held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 38-75.) On February 3, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-26.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on May 11, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since June 19, 2014, the amended alleged onset date. (AR 17.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plantiff's disorders of the spine, including L4-L5 annular tear; and left knee chondromalacia. (AR 17-19.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 19-20.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with additional limitations: he cannot climb ladders, ropes, or scaffolds. He can occasionally stoop and crouch. He can occasionally push and pull with the lower extremities. (AR 20.) With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. (AR 24.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other representative occupations, such as production assembler; assembler, electrical accessories; and bottle packer. (AR 35-36.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting his subjective symptom testimony; and (2) assessing certain medical evidence and opinions.[2] The Commissioner argues that the ALJ's

---

[2] Plaintiff's opening brief also challenges the ALJ's RFC assessment and step-five findings, but in doing so only reiterates arguments made elsewhere. Dkt. 12 at 16-17. Accordingly, these issues will not be analyzed separately.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 3

decision is supported by substantial evidence and should be affirmed.

Subjective symptom testimony

The ALJ discounted Plaintiff's testimony due to inconsistencies between his allegations and the medical record, specifically the evidence of sparse treatment, Plaintiff's delay in pursuing treatments that could improve his functioning, and conservative treatment. (AR 20-22.) The ALJ also cited many normal examination findings, reasoning that these findings were inconsistent with Plaintiff's allegations of physical limitations, and noted that Plaintiff reported an ability to carry 40 pounds with difficulty. (AR 20-21.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ could not discount his testimony solely because his allegations were not fully corroborated by the medical evidence. Dkt. 12 at 9. But the ALJ did not solely rely on this reasoning, and therefore this argument fails to identify error in the ALJ's decision.

Plaintiff goes on to emphasize that some of his medical records document certain abnormalities (Dkt. 12 at 9), but these findings do not undermine the evidence cited by the ALJ, showing that Plaintiff's functionality was typically found to be intact. (*See* AR 21.) The ALJ did not err in focusing on determining which functional limitations were established by the medical record. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff also argues that the ALJ erred in finding that his ability to carry 40 pounds with difficulty undermined his allegations, because the difficulty he described was consistent with his

allegations that he was unable to work based on his combination of mental and physical limitations. Dkt. 12 at 9-10. But Plaintiff described more extensive lifting/carrying restrictions than he acknowledges in his briefing; he testified at the hearing that he was unable to hold his cat, who weighs eight pounds. (*See* AR 59-60.) Furthermore, at the hearing, Plaintiff's attorney argued that his physical impairments were "primary." (AR 64.) The ALJ did not err in finding that Plaintiff's ability to lift 40 pounds, even with difficulty, was inconsistent with his allegation of disability based primarily on physical limitations, or in discounting Plaintiff's testimony based on the contradiction between his activity and his description of his limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Plaintiff also challenges the ALJ's reasoning with respect to his lack of treatment and failure to follow through on treatment recommendations, contending that the ALJ failed to consider his reasons for lack of treatment. Plaintiff explains that he testified that he was "pretty much anti-doctor all my life[,]" but this testimony does not establish error in the ALJ's decision. Dkt. 12 at 10-11 (citing AR 41). Plaintiff's personal preferences regarding the field of medicine does not establish that his preference for refusing or delaying treatment was reasonable. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1101, 1113-14 (9th Cir. 2012) (affirming an ALJ's discounting a claimant's testimony based on a resistance to treatment, where there was no evidence that the resistance was based on her impairments rather than her personal preference). Although Plaintiff's briefing describes him as "doctor-phobic" (Dkt. 12 at 11), Plaintiff never described a fear of doctors. Plaintiff has not shown that the ALJ erred in relying on his sparse, delayed, and refused treatment, in assessing his testimony.

Lastly, Plaintiff argues that the ALJ erred in finding that his conservative treatment

undermined his allegations, because evidence of conservative treatment does not prove that he did not experience pain or that he could work full-time. Dkt 12 at 11. But evidence of conservative treatment does reasonably undermine a claimant's allegations of disabling limitations. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that evidence of "conservative treatment" suggests "a lower level of both pain and functional limitation" than claimed by plaintiff). The ALJ did not err in discounting Plaintiff's testimony on this basis.

Plaintiff goes on to devote more than four pages of his brief to a summary of his subjective allegations. Dkt. 12 at 11-15. This summary does not establish error in the ALJ's assessment of his testimony. Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's testimony, those findings are affirmed.

Medical evidence

Plaintiff argues that the ALJ erred in assessing various aspects of the medical record. Dkt. 12 at 2-8. The Court will address each dispute in turn.

Legal standards

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

*Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Samuel Coor, D.O.

Dr. Coor performed a consultative examination of Plaintiff's physical condition in June 2014, finding that he could not crawl or kneel, but had few other physical restrictions. (AR 272-77.) The ALJ gave great weight to Dr. Coor's opinion, noting that his own RFC assessment was more restrictive than Dr. Coor's opinion in light of subsequent MRI evidence. (AR 22-23.)

Plaintiff argues that the ALJ erroneously assumed that subsequent MRI evidence "would not have significantly affected Dr. Coor's opinion[,]" but that is not what the ALJ stated. Dkt. 12 at 3. The ALJ stated that he found Plaintiff to be more limited than Dr. Coor based on subsequent MRI evidence. (AR 23.) Furthermore, Plaintiff has not shown that the MRI evidence establishes the existence of greater restrictions than described by Dr. Coor, and therefore this argument does not establish error in the ALJ's decision.

Plaintiff also contends that the ALJ erred in finding that Dr. Coor's examination was the "most comprehensive physical examination in the record" because his treating orthopedic surgeons performed examinations and were also able to review the MRIs that post-date Dr. Coor's examination. Dkt. 12 at 3. Plaintiff does not cite any particular treatment notes that document a more thorough examination than performed by Dr. Coor, however. *See id.* Many of the treatment notes do not reference specific findings pertaining to coordination and gait, range of motion, and/or muscle strength, all of which were tested and documented by Dr. Coor. (*See* AR 311-29.)

Lastly, Plaintiff argues that the ALJ erred in failing to account for the restrictions identified by Dr. Coor, namely his inability to crawl or kneel and his limited ability to bend, stoop, carry, and lift. Dkt. 12 at 3. With respect to Plaintiff's carrying/lifting abilities, Dr. Coor found him capable of lifting/carrying up to 40 pounds "intermittently" and 60 pounds rarely, which is

consistent with the lifting/carrying requirements implied in the ALJ's finding that Plaintiff could perform light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Thus, the ALJ's RFC assessment is consistent with Dr. Coor's opinion with respect to lifting/carrying restrictions.

Furthermore, the ALJ found that Plaintiff was limited to occasionally stooping, which is consistent with Dr. Coor's opinion that Plaintiff could perform "intermittent" stooping. (*Compare* AR 20 *with* AR 275.)

Thus, the only conflicts between Dr. Coor's opinion and the ALJ's RFC assessment pertain to Plaintiff's ability to crawl, kneel, and bend. As noted by the Commissioner, two out of the three jobs (electrical accessories assembler and bottle packer) identified by the ALJ at step five do not require any crawling or kneeling, per the Dictionary of Occupational Titles (DOT), and these jobs exist in significant numbers even without the inclusion of the third job. Dkt. 13 at 8; AR 25 (finding nearly 100,000 national electrical accessories assembler and bottle packer jobs). The DOT does not describe any bending requirements in either of those jobs, either. *See* DOT 729.687-010, *available at* 1991 WL 679733; DOT 920.685-026, *available at* 1991 WL 687929. Plaintiff suggests that it is implausible that neither an electrical accessories assembler nor a bottle packer would need to bend forward (Dkt. 14 at 3), but Dr. Coor found that Plaintiff was capable of intermittent bending throughout the workday, and Plaintiff's speculation does not establish that the electrical accessories assembler or bottle packer jobs require more frequent bending. Thus, Plaintiff has failed to meet his burden to show that the ALJ's failure to include all of the postural limitations described by Dr. Coor resulted in harmful error.

To the extent that Plaintiff suggests that the Commissioner's reliance on the DOT definitions of the electrical accessories assembler and bottle packer jobs amounts to a *post hoc* rationalization, he is mistaken: the Commissioner did not cite the DOT for the purpose of adding

to the ALJ's reasoning, but for the purpose of showing that any error in the ALJ's decision is harmless. Such an argument does not amount to a *post hoc* rationalization.

Because Plaintiff has not established a harmful error in the ALJ's failure to include all of the limitations described by Dr. Coor, the ALJ's assessment of Dr. Coor's opinion is affirmed.

B. Gardner

The record contains a DSHS form opinion signed by a "B. Gardner" and co-signed by another person whose name is not legible. (AR 295-99.) Gardner found Plaintiff capable of performing sedentary work in July 2014. (*Id.*)

The ALJ gave little weight to this opinion because Gardner did not explain why Plaintiff was limited to sedentary work, and the physical examination was less thorough than Dr. Coor's examination two months earlier. (AR 23.) The ALJ also noted that although Gardner diagnosed depression and described it as "marked," Gardner left blank the portion of the form asking which work activities were impacted by this condition. (AR 23 (referencing AR 296).)

Plaintiff argues that the ALJ erred in failing to acknowledge that Nancy Armstrong, ARNP, co-signed this opinion. Dkt. 12 at 4. The second signature on this form opinion is not legible, however; Plaintiff's counsel told the ALJ at the hearing that she believed the second signature was attributable to Ms. Armstrong, and the ALJ stated that he found the signature to be illegible. (AR 51-53.) The ALJ did not err in failing to speculate as to the identity of the person who co-signed Gardner's opinion.

Plaintiff goes on to argue that even if the opinion itself does not describe a thorough examination, it does reference imaging and range-of-motion testing. Dkt. 12 at 4-5. This may be true, but Gardner did not explain how the imaging or range-of-motion testing supported the conclusions stated in the opinion, and thus the ALJ reasonably found that the opinion was

unexplained and properly discounted it on that basis. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (the better an explanation provided in support of an opinion, the more weight that opinion will be given).

### Miscellaneous treatment notes

Plaintiff summarizes a variety of treatment notes and argues that the ALJ erred in failing to acknowledge that these treatment notes corroborate his testimony. Dkt. 12 at 5-6. Plaintiff's presentation of an alternative interpretation of the evidence does not establish error in the ALJ's decision, however, and he has not shown that the ALJ failed to address any significant, probative evidence.

### Empress Oramas, D.O.

Dr. Oramas's treatment notes contains references to multiple diagnoses, including depression. (*See* AR 330-37.) The ALJ mentioned Plaintiff's treatment with Dr. Oramas (AR 18-19, 21), and assessed the severity of Plaintiff's depression, ultimately finding it to be a non-severe impairment (AR 18-19).

Plaintiff argues that the ALJ erred in failing to assess any of Dr. Oramas's findings or opinions, "including her uncontradicted opinion that [he] has depression." Dkt. 12 at 7. Plaintiff also argues that the ALJ erred in failing to account for any depression-related limitations in the RFC assessment. *Id.*

Plaintiff's argument overlooks the ALJ's assessment of his depression at step two, and does not identify any error in the ALJ's findings that his depression was not severe and that his depression did not cause any functional limitations. (AR 18-19.) As a result, Plaintiff has failed to identify a harmful legal error in the ALJ's assessment of Dr. Oramas's treatment notes or diagnoses.

<u>J. Dalton, M.D.</u>

Dr. Dalton, a non-examining DSHS reviewer, reviewed a July 2014 medical note for purposes of determining Plaintiff's eligibility for state disability benefits. (AR 292-94.) Dr. Dalton found Plaintiff capable of performing sedentary work with additional physical limitations. (AR 293.)

The ALJ gave little weight to Dr. Dalton's opinion, because it was based on a single medical record, which the ALJ presumed (based on the date) was the Gardner examination (discussed *supra*), to which the ALJ assigned little weight. (AR 23-24.) The ALJ also found Dr. Dalton's opinion to be inconsistent with the thorough examination findings of Dr. Coor, as well as the subsequent records, and inconsistent with Plaintiff's reported ability to lift 40 pounds. (AR 24.)

Plaintiff contends that the Gardner examination was not "incomplete," as described by the ALJ, and that Dr. Dalton's opinion could be found consistent with the subsequent record. Dkt. 12 at 8. But, as explained *supra*, the ALJ did not err in finding that the Gardner examination was less thorough than Dr. Coor's examination, and Plaintiff has not shown that records available subsequent to Dr. Coor's examination establish the existence of more restrictive limitations than those found by the ALJ. The ALJ's reasons for discounting Dr. Dalton's opinion are legally sufficient. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

Because the ALJ provided legally sufficient reasons to discount the challenged medical opinion evidence, Plaintiff has not established error in the ALJ's assessment of the medical evidence.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>4th</u> day of May, 2018.

Mary Alice Theiler
United States Magistrate Judge